UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT TASHBOOK,

                        Petitioner,

    v.

WARDEN JAMES PETRUCCI,

                        Respondent.

No. 20-CV-5318 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

Appearances:

Robert Tashbook
Otisville, NY
*Pro Se Petitioner*

Audrey Strauss, Esq.
Danielle J. Levine, Esq.
U.S. Attorney's Office
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

      Robert Tashbook ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas Corpus (the "Petition")—ostensibly pursuant to 28 U.S.C. § 2254—alleging that he is currently being housed in unconstitutional conditions of confinement at FCI Otisville ("Otisville") and is seeking to be released "either from prison or from the restrictive conditions [he is] being housed under." (*See* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. No. 1).)

      In a Report and Recommendation ("R&R") dated April 22, 2021, Magistrate Judge Paul E. Davison ("Judge Davison") recommended that the Petition be denied in its entirety. (*See* Report & Recommendation ("R&R") (Dkt. No. 38).) Petitioner filed Objections to the R&R on May 23, 2021, (*see* Pet'r's Obj's to R&R ("Obj's") (Dkt. No. 41)), to which Respondent

responded on June 16, 2021, (*see* Resp't's Resp. to Pet'r's Obj's to R&R ("Resp. to Obj's") (Dkt. No. 42)). After a review of the R&R, Petitioner's Objections, and Respondent's Response to the Objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I. Background

### A. Factual Background

Petitioner has been incarcerated at Otisville since his 2002 conviction in the Northern District of California for various counts of attempted and actual unlawful sexual conduct with minors. *See United States v. Tashbook*, No. 01-CR-20160, Dkt. No. 162 (N.D. Cal. Oct. 30, 2002). Otisville is a medium-security federal correctional institute operated by the Bureau of Prisons ("BOP") that includes a minimum-security satellite camp (the "Camp"). (*See* Decl. of Robert Schreffler in Opp'n to Pet. ("Schreffler Decl.") ¶ 3 (Dkt. No. 14).) Since the onset of the COVID-19 pandemic, BOP has implemented various protocols throughout its facilities— including at Otisville and the Camp—to reduce the spread of infection. (*See id.* ¶ 5.) These measures include severely limiting the movement of inmates and detainees among and within its facilities and permitting inmate gathering only to the extent necessary to facilitate essential services. (*See id.*) At Otisville, every newly admitted inmate is screened upon arrival for COVID-19 exposure risk factors and symptoms so that each inmate can be sorted into an appropriate housing unit. (*See id.* ¶ 6.) Inmates who have been exposed to COVID-19 but are asymptomatic are placed in the Quarantine Unit for 14 days; inmates who have been exposed to COVID-19 and are symptomatic are placed in the Isolation Unit and individually monitored. (*Id.*) Thereafter, any inmate who has been in contact with an inmate showing symptoms of COVID-19 is placed in the Quarantine Unit for 14 days. (*Id.*)

On June 16, 2020, Petitioner was tested for COVID-19 after a possible exposure to a COVID-19 positive inmate, and his entire housing unit was restricted to only allow ten inmates outside for approximately one hour at a time per day. (*See id.* ¶ 7.) Although Petitioner's test from that date came back negative, Petitioner was placed in the Quarantine Unit on June 23, 2020 along with the rest of his housing unit, because an inmate in the housing unit tested positive. (*See id.*)[1] Petitioner was then re-tested 14 days later—on July 7, 2020—in accordance with BOP policy. (*See id.*) While this test also came back negative two days later—on July 9, 2020—Petitioner remained in quarantine with the rest of his housing unit until the test results from all of the inmates in Petitioner's housing unit came back. (*See id.*) Petitioner was released back into the general population on July 17, 2020. (*See id.* at ¶ 9.)

While Petitioner was in quarantine, he retained full access to his medications and medical treatment, though his access to educational and religious programming was limited in a manner to prevent spreading the virus. (*See id.* ¶ 8.) Petitioner did not have access to recreation while quarantined, because Otisville's Quarantine Unit does not have an outdoor area and quarantined inmates are not permitted to mix with general population inmates per BOP policy. (*See id.*)[2]

---

[1] Petitioner and Respondent appear to disagree on the date which Petitioner began his quarantine. Petitioner alleges that he was placed in the Quarantine Unit on June 16, 2020, while Respondent contends Petitioner was placed in the Quarantine Unit on June 23, 2020. (*Compare* Pet. 1 *with* Schreffler Decl. ¶ 7.) This discrepancy does not affect the disposition of the instant Objections, but the Court notes that Respondent's date of June 23, 2020 appears to be supported by Otisville's housing records and Petitioner seems to have conceded that he entered quarantine on June 23, 2020 in his Reply. (*See* Schreffler Decl. Ex. 4 (Dkt. No. 14-4); Reply in Supp. of Pet. 8 (Dkt. No. 36) (explaining that Petitioner met with Respondent "as [Petitioner] was entering the Quarantine Unit (on 23 June) . . . ").)

[2] Petitioner also claimed in the Petition that he lost his job in food service to another inmate while he was quarantined. (*See* Pet. 1.) However, Respondent offers the declaration of Robert Schreffler, an Executive Assistant/Camp Administrative at Otisville, who attests that Respondent did not lose his job in food service. (*See* Schreffler Decl. ¶ 8.) This discrepancy, too, does not affect the disposition of the instant Objections. However, the Court notes that in the Objections, Petitioner claims he "has once again lost his food service job," (Obj's 6), which

B.  Procedural History

On July 1, 2020—prior to Petitioner's release back into the general population—Petitioner submitted the instant Petition.  (*See* Pet.)  Respondent filed a Memorandum of Law opposing the Petition on September 9, 2020.  (*See* Resp't's Mem. of Law in Opp'n to Pet. (Dkt. No. 12); Schreffler Decl.; Decl. of Marc Peakes in Opp'n to Pet. (Dkt. No. 13).)  On October 5, 2020, Petitioner filed a request for the appointment of pro bono counsel, (*see* Dkt. No. 20), in addition to a request for an extension of time to reply, in which Petitioner included several substantive arguments, (*see* Dkt. No. 21).  On January 5, 2021, Judge Davison denied without prejudice Petitioner's request for the appointment of counsel, (*see* Dkt. No. 31), but granted Petitioner's request for an extension of time to reply to the extent that Judge Davison agreed to consider the arguments Petitioner set forth in the same request, (*see* Dkt. No. 32).  On January 22, 2021, Petitioner sought reconsideration of Judge Davison's January 5 orders, (*see* Dkt. No. 33), which Judge Davison granted on February 2, 2021, to the extent that Judge Davison granted Petitioner 30 days to file a reply in support of the Petition, (*see* Dkt. No. 34), which Petitioner filed on March 4, 2021, (*see* Reply (Dkt. No. 36)).

On April 22, 2021, Judge Davison issued the R&R in which he recommended that this Court deny the Petition in its entirety.  (*See* R&R.)  Petitioner filed the Objections on May 23, 2021, (*see* Obj's), to which Respondent responded on June 16, 2021, (*see* Resp. to Obj's).  Petitioner has since filed a "Request for Judicial Notice and Appropriate Sanctions/Relief/ Corrective Action" based on certain issues that Petitioner has been experiencing with Otisville's

---

seems to suggest that perhaps Petitioner did not work in food service during the duration of his quarantine, but resumed work after his release from quarantine.

mail system, (*see* Dkt. No. 45), and a "(Renewed) Request for an Evidentiary Hearing," in which Petitioner included a proposed witness list, (*see* Dkt. No. 46).

## II.  Discussion

### A.  Applicable Law

#### 1.  Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," FED. R. CIV. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* FED. R. CIV. P. 6(d), for a total of seventeen days, *see* FED. R. CIV. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting FED. R. CIV. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### 2. Standard of Review

As a preliminary manner, the Court agrees with Judge Davison that although Petitioner ostensibly filed the Petition pursuant to 28 U.S.C. § 2254, because Petitioner is clearly challenging the manner in which his sentence is being executed rather than his underlying conviction, his habeas petition is properly governed by 28 U.S.C. § 2241. (*See* R&R 1 n.1 (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) and *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008)).) Moreover, Petitioner does not appear to object to this conclusion. (*See generally* Obj's.) As such, this Court will construe the Petition as seeking relief pursuant to § 2241. *See Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997) ("We . . . hold that if a prisoner erroneously labels a petition as being filed under [§] 2255 when the relief it seeks is available only under [§] 2241, the mis-labeling must be disregarded in applying the gatekeeping provision. It is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petition is entitled to.").

Because petitions brought pursuant to § 2241 challenge the conditions of an inmate's confinement, the relevant inquiry is whether the conditions in which the inmate is being housed

6

violate the Eighth Amendment's prohibition against cruel and unusual punishment. *See Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 348 (S.D.N.Y. 2020) (explaining that "[t]he Eighth Amendment . . . for convicted prisoners . . . govern[s] the inmates' claims of unconstitutionality" brought via a § 2241 petition); *see also Basank v. Decker*, — F. Supp. 3d —, 2020 WL 1953847, at *8 (S.D.N.Y. Apr. 23, 2020) (applying Eighth Amendment standards in considering § 2241 petition alleging unconstitutional conditions of confinement due to risk of contracting COVID-19). The Eighth Amendment inquiry involves both an "objective" and "subjective" prong. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

"The objective prong asks whether the conditions of which [an] inmate[] complain[s], 'either alone or in combination, pose an unreasonable risk of serious damage to [his] health, which includes the risk of serious damage to physical and mental soundness.'" *Fernandez-Rodriguez*, 470 F. Supp. 3d at 348 (quoting *Darnell*, 849 F.3d at 30); *see also Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *11 (S.D.N.Y. Jan. 31, 2020) (same). However, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain 'a conditions-of-confinement claim.'" *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Thus, "there is no 'static test' to determine whether a deprivation is sufficiently serious; '[t]he conditions themselves must be evaluated in light of contemporary standards of decency.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (alteration in original) (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)); *see also Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) ("No static 'test' can exist by which the courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." (quotation marks

omitted)). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (explaining that to prove the objective prong, the inmate must demonstrate that "the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities" (quotation marks omitted)).

Under the subjective prong, an inmate must show that "'the official knows of and disregards an excessive risk to inmate health or safety;'" in other words, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Darnell,* 849 F.3d at 32 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see also Pratt v. City of New York*, 929 F. Supp. 2d 314, 320 (S.D.N.Y. 2013) (explaining that "[a plaintiff] must show that the defendants knew of the health dangers and yet refused to remedy the situation, constituting deliberate indifference" (quotation marks omitted)). "To meet the subjective element, a plaintiff must show that the defendant 'acted with more than mere negligence,'" *Bryant*, 2020 WL 508843, at *11 (quoting *Walker,* 717 F.3d at 125), but "evidence that the risk was obvious or otherwise must have been known to a defendant" is sufficient, *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003). Overall, an inmate cannot succeed on a § 2241 petition unless the defendant has "create[d] inhumane prison conditions, deprive[d] [the] inmate[] of basic necessities, or fail[ed] to protect [his] health or safety." *Overton v. Bazzetta,* 539 U.S. 126, 137 (2003).

B.  Analysis

Petitioner claims that while in quarantine, he was housed in unconstitutional conditions of confinement because he was denied access to regular education and religious programming,

8

recreation, and contact with other inmates even though he never tested positive for COVID-19, all of which had detrimental effects on his mental and emotional well-being. (*See* Pet. 1.) Respondent argued that the Petition should be denied as moot, or, in the alternative, for failure to exhaust administrative remedies. (*See* Resp't's Opp'n 3–6.) While Judge Davison found that the Petition fell into both the "capable of repetition, yet evading review" and voluntary cessation exceptions to the mootness doctrine, (*see* R&R 2–4), he determined that Petitioner failed to exhaust administrative remedies and recommended that the Petition be denied, (*see id.* at 4–8). Petitioner objects on several grounds, appearing to argue: (1) that exhaustion would have been futile because Respondent had reneged on a promise made to Petitioner on June 23, 2020 that Petitioner would be released from quarantine on June 29, 2020, and was well aware that Petitioner had not been released on that date; and (2) that Judge Davison imposed a post-filing exhaustion requirement, which is not required by law and no longer possible as a practical matter. (*See* Obj's 1–5.)[3]

---

[3] Petitioner also appears to interpose additional arguments based on a more recent quarantine, which began on May 20, 2021. (*See* Obj's 5–6.) To the extent Petitioner attempts to bring additional claims based on the more recent quarantine, the Court declines to consider them, since they were not—and indeed, could not have been—raised in the Petition. *See Read v. Superintendent Mr. Thompson*, No. 13-CV-6962, 2016 WL 165716, at *11 (S.D.N.Y. Jan. 13, 2016) (explaining that "[the] [p]etitioner's failure to raise [a claim] in his [] [p]etition . . . precludes [its] consideration"); *see also Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the [c]ourt may not consider claims raised for the first time in the petitioner's objections."); *McPherson v. Johnson*, No. 95-CV-9449, 1996 WL 706899, at *2 (S.D.N.Y. Dec. 9, 1996) ("[The] [p]etitioner cannot raise, in his objection to the [m]agistrate [j]udge's report, new claims not raised in his initial petition.").
 To the extent Petitioner raises his most recent quarantine in support of his argument that the Petition falls into an exception to the mootness requirement, the Court notes that Respondent has not objected to this portion—or any other portion—of the R&R. The Court, upon review of the R&R, finds that "the factual and legal bases supporting" Judge Davison's ruling as to mootness "are not clearly erroneous or contrary to law." *Eisenberg*, 564 F. Supp. 2d at 226.

1. Standard for Exhaustion

A federal prisoner seeking relief pursuant to § 2241 must exhaust his or her administrative remedies prior to bringing suit.  *See Carmona*, 243 F.3d at 634; *see also Lasane v. Tellez*, No. 21-CV-2074, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) ("Before [a] [p]etitioner may seek relief through a petition for a writ of habeas corpus, however, he must show exhaustion of his administrative remedies." (italics omitted)).  "Although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to habeas corpus relief under § 2241." *Lesane*, 2021 WL 3500916, at *2 (italics omitted); *see also Goodall v. VonBlanckensee*, No. 17-CV-3615, 2019 WL 8165002, at *4 (S.D.N.Y. July 19, 2019) ("Although not required by the Prison Litigation Reform Act . . . [§] 2241 exhaustion is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same." (citing *Bowens v. Fed. Bureau of Prisons*, No. 12-CV-5591, 2013 WL 3038439, at *3 (S.D.N.Y. June 18, 2013))), *report and recommendation adopted*, 2020 WL 1082565 (S.D.N.Y. Mar. 5, 2020).

As Judge Davison explained in the R&R, BOP provides a process through which federal prisoners can administratively challenge the conditions of their confinement: the Administrative Remedy Program (the "Program").  (*See* R&R 5 (citing *Chi v. Fernandez*, No. 18-CV-1212, 2019 WL 6894837, at *5 (N.D.N.Y. Dec. 18, 2019) and *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009)).)  "Exhaustion requires completion of the Program's four steps." (*Id.*)  "First, the inmate must attempt to informally resolve the issue by raising it with prison staff."  (*Id.* (citing 28 C.F.R. § 542.13(a)).)  "Second, if the issue is not resolved informally, the inmate must submit 'a formal written Administrative Remedy Request on the appropriate form

10

(BP-9)' to the designated staff member at the facility." (*Id.* (quoting 28 C.F.R. § 542.14(a)).) "Third, if the formal request is denied by the Warden, the inmate must appeal to the appropriate BOP Regional Director." (*Id.* (citing 28 C.F.R. § 542.15(a)).) "Fourth, the inmate must appeal an unfavorable decision at the regional level to the BOP's General Counsel." (*Id.* (citing 28 C.F.R. § 542.15(a)).)

"Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the court that the failure to exhaust should be excused." *Rosenthal*, 667 F. Supp. 2d at 366; *see also Zucker v. Menifee*, No. 03-CV-10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) ("[T]he exhaustion requirement for § 2241 petitions is prudential, not statutory, . . . [t]herefore, . . . failure to exhaust may be excused at the court's discretion."). As Judge Davison explained, "'[w]hen . . . legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies,' failure to exhaust may be excused by a showing of 'cause and prejudice.'" (R&R 5 (quoting *Carmona*, 243 F.3d at 634).) *See also Hodge v. United States (BOP)*, No. 20-CV-10474, 2021 WL 738707, at *3 (S.D.N.Y. Feb. 24, 2021) (same). "Generally, cause can be shown when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." (R&R 5–6 (quoting *Hodge*, 2021 WL 738707, at *3).) *See also Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009) ("A court rightly excuses a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it." (quotation marks omitted)).

11

2. Application

As noted above, Petitioner's main objection to the R&R appears to be that pursuing an administrative remedy would have been futile because the Respondent—who plays a role in the administrative process as the Otisville warden—had reneged on his promise that Petitioner would be released from quarantine on June 29, 2020 and was aware of Petitioner's continued quarantine. (*See* Obj's 1–3.) Liberally construed, Petitioner seems to suggest that either Respondent was biased against him (because Respondent was aware of his predicament and declined to provide Petitioner relief) or that further exhaustion would have been futile because Petitioner had already attained the relief he sought via Respondent's promise of release and that relief had not been implemented. (*See id.*)

It is worth noting at the outset that these arguments are not frivolous. First, it is well-settled that exhaustion may be futile "either because agency decisionmakers are biased or because the agency has already determined the issue," *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2009) (citing *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992)), and here, Respondent is properly considered an agency decisionmaker. Second, the Second Circuit has held that "where prison regulations fail to provide a remedy for implementation failures, prisoners who receive a favorable outcome to their initial grievance that remains unimplemented have fully exhausted their administrative remedies." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004)). And, here, Petitioner had arguably received a favorable outcome from his attempt at informal resolution in the form of Respondent's alleged promise to release him from quarantine by June 29, 2020, which indisputably did not take place. (*See, e.g.*, Obj's 1–3.) However, the Court ultimately agrees with Judge Davison that Petitioner's failure to exhaust cannot be excused here because Petitioner

could have attained relief via a challenge to Otisville's quarantine policy writ large.  (*See* R&R 7–8.)

A formal grievance that proceeded through all four steps of the Program would have allowed prison officials to reconsider BOP and Otisville's COVID-19 quarantine protocols and policies, which would have provided Petitioner with "a genuine opportunity for relief," and as such, "exhaustion of administrative remedies would not [have been] futile."  *Reynolds v. Petrucci*, No. 20-CV-3523, 2020 WL 4431997, at *2 (S.D.N.Y. July 29, 2020); *see also Ruggiero*, 467 F.3d at 177 ("[S]o long as some remedy remains available, failure to exhaust is not excused."); *Bolling v. Terrell*, No. 10-CV-3594, 2011 WL 705396, at *2 (E.D.N.Y. Feb. 15, 2011) (finding futility argument unpersuasive because, inter alia, "other available remedies, such as improvement of conditions or transfer, provide a genuine opportunity for relief" and "administrative exhaustion affords the BOP the opportunity to provide the relief and render judicial review unnecessary").

Petitioner also argues that Judge Davison imposed a post-filing exhaustion requirement, which is not required by law and no longer possible as a practical matter.  (*See* Obj's 3–5.)  This objection lacks any merit.  Petitioner is correct in principle that exhaustion is a pre-filing requirement, and when the same issue is the basis of a second complaint, there is no need to re-exhaust, as the Second Circuit explained in *Johnson v. Killian* and the Fifth Circuit explained in *Moussazadeh v. Texas Department of Criminal Justice*.  (*See* Obj's 4–5.)  *See Johnson v. Killian*, 680 F.3d 234, 238–39 (2d Cir. 2012) (holding that the petitioner's 2005 grievance "was sufficient to exhaust his administrative remedies with respect to" the same complained-of conduct that continued through 2007); *Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 788 (5th Cir. 2012) ("Where the prisoner's complaint addresses an ongoing problem or

13

multiple instances of the same type of harm, prisoners need not file a new grievance in each instance to quali[f]y for exhaustion."). However, Petitioner misconstrues the R&R. Judge Davison did not conclude that Petitioner was required to *re*-exhaust his administrative remedies for the Petition to succeed, rather, he explained that Petitioner had *never* exhausted his administrative remedies. (*See* R&R 7–8.) Critically, Petitioner does not appear to dispute this, given that his main argument rests on his attempt to convince the Court that exhaustion should have been excused. (*See* Pet.; Obj's.)

### 3. Evidentiary Hearing

Petitioner has also filed a renewed request for an evidentiary hearing on the basis of what Petitioner labels "clear factual disputes." (*See* Pet. Renewed Req. for Ev. Hearing 1.) While "[a] district court has broad discretion to hear further evidence in habeas cases," *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999), courts are instructed that evidentiary hearings should only be held when there are material facts in dispute, *see, e.g.*, *Sigal v. Searls*, No. 18-CV-389, 2018 WL 5831326, at *3 (W.D.N.Y. Nov. 7, 2018) ("Although a district court may order an evidentiary hearing if it finds material facts to be in dispute, petitioners applying for a writ of habeas corpus generally are not entitled to such a hearing." (quoting *Hall v. Conway*, No. 04-CV-6011, 2008 WL 2559371, at *2 (W.D.N.Y. June 23, 2008))). Here, the Court finds that there are no such disputes of material fact.

Petitioner appears to identify the following "clear factual disputes": (1) whether Respondent personally promised Petitioner that he would be released from quarantine on June 29, 2020; (2) whether Petitioner actually had close contact with a COVID-19 positive inmate; (3) whether Petitioner's threats of suicide based on his continued quarantine were genuine; and (4) whether Respondent was aware that Petitioner had not been released from

quarantine on June 29, 2020, as promised. (*See generally* Renewed Req. for Ev. Hearing.) However, none of these alleged factual disputes is material. Because Petitioner did not exhaust his administrative remedies and cannot demonstrate that exhaustion should be excused, his Petition fails as a matter of law. As such, the Court finds that an evidentiary hearing is not required to dispose of the Petition. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (explaining that "if the record . . . precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Ocasio v. United States*, No. 08-CV-1305, 2014 WL 1877668, at * 3 (S.D.N.Y. May 8, 2014) (denying a petitioner's request for an evidentiary hearing when "the [c]ourt had all relevant facts necessary to evaluate [the] [p]etitioner's § 2241 . . . [p]etition[], and none of the factual issues on which [the] [p]etitioner s[ought] a hearing would have affected the [c]ourt's decision[]").

### III.  Conclusion

This Court, having conducted a thorough review of the R&R, finds no error, clear or otherwise. The Court therefore adopts the outcome the R&R. Petitioner's writ fails as a matter of law, and as such, Petitioner's renewed request for an evidentiary hearing is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010)

(citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it was not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and close the case.

SO ORDERED.

Dated:  March 25, 2022
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge