UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT TASHBOOK,
    Petitioner,

v.                                              No. 20-CV-5318 (KMK)(PED)

WARDEN JAMES PETRUCCI,
    Respondent.



REQUEST FOR RECONSIDERATION OF ORDER ADOPTING R&R [Doc 48]

    Petitioner pro se, Mr. Robert Tashbook, respectfully REQUESTS that this Court RECONSIDER its Order of 25 March 2022 [Doc 48] and the resulting Judgment [Doc 49?]. He contends that there were errors of law and fact in the Order, as he will extensively document below. These, and other good cause, justify reconsidering this Court's Order and the associated judgment.

    This Request is pursuant to Fed. R. Civ. P. 59(e) and Local Civ. R. 6.3. It is timely since it was filed (Certificate of Mailing) within the twenty eight (28) day requirement (which as per Fed. R. Civ. P. 6(d) – due to "service by mail" – is extended by three (3) more days).

    There was only one unsettled issue that this Court needed to decide in its Order – Exhaustion of Administrative Remedies – and that decision needs to

MEMO ENDORSED

be reconsidered. The decision to not hold an Evidentiary Hearing should also be reconsidered, if this Court is unwilling to Reverse its Order solely based on the Petitioner's factual representations (affirmed under penalty of perjury) herein and in earlier filings.

This Court characterized the Exhaustion Question as whether Petitioner's failure to exhaust should be excused — which presumed a lack of exhaustion. However, the facts and controlling case law — both overlooked by this Court — demonstrate the claims WERE exhausted. Alternatively, if the analysis is whether exhaustion can be excused in this case, the Court seemed unaware that there was no possible further appeal in actual practice (an overlooked fact — grounds for reconsideration) and also that there was nothing grievable in this case, making any non-exhaustion irrelevant. All of the above points are detailed below.

Beginning with his first filing [Doc 1], Mr. Tashbook has stated that he has exhausted his remedies. This was based on his two Informal Resolution attempts — the first step of the BOP's Grievance Policy [see, 28 C.F.R. §542.13(a)] — which both, although favorably resolved (something that no rational person would appeal further) eventually had "Implementation failures."

Because the Court overlooked the controlling decision in this regard, SHRADER v. CSX TRANSP. INC, 70 F.3d 255, 257

Page 2 of 9

Reconsideration (Cont.)

(2d Cir 1995) specifies that is sufficient grounds for reconsideration. The controlling case, MARVIN v. GOORD, 255 F.3d 40, 43 & fn.3 (2d Cir 2001), says that favorable "resolution of the matter through informal channels satisfies the exhaustion requirement." This case continues to be good law and in this District, Judge Vincent Briccetti applied it in PELLIS v HOBBS, No. 16 CV 4023 (VB), 2018 WL 3212463 at *5 (SDNY 29 June 2018) when denying Respondent's Summary Judgment on the Exhaustion issue.

Besides overlooking case law, overlooking essential facts is another reason for reconsideration, as noted in SHRADER (as cited, supra). On page 3 of its Order [Doc 48] this Court misstates several essential facts: 1) Mr. Tashbook was NEVER "placed in the Quarantine Unit... along with the rest of his housing unit." Had he not been singled out he likely would not have filed this case. The reality was that only FOUR (4) prisoners, out of the 100+ in his housing unit were placed in the Quarantine Unit — and none of those four tested positive for COVID anytime in the Summer of 2020. 2) Contrary to the Court's statement that, "an inmate in [his] housing unit tested positive," records will show that NO inmate in Mr. Tashbook's housing unit EVER tested positive for COVID anytime from May through December 2020. These misunderstandings surely affected the Court's ruling.

A review of the facts (some of which may be new to this Court, and along with the other facts, may be grounds for reconsideration) should show how/when exhaustion occurred.

Page 3 of 9

Reconsideration (Cont.)

On 16 June 2020, Mr. Tashbook, for the first time in his life, was given a Polymerase Chain Reaction [PCR] test to determine whether he had the COVID virus. He remained in his regular cell before and after the results came back negative, but a piece of paper labeled "Quarantine" was affixed to his cell door. A week later, despite all COVID tests in his Unit and the adjacent one [GB], as well as all members of his Food Service work crew, coming back NEGATIVE for COVID, on 23 June 2020, he was moved to the Quarantine Unit — with no logical explanation, and with no policy supporting the move. Before agreeing to go to a cell in the Quarantine Unit, Petitioner had a face-to-face conversation with Respondent Warden James Petrucci and expressed his concerns about the reasons for his move to the new Unit and his length of stay there. Petrucci assured him he would be returned to his housing unit on or before Monday, 29 June 2020. Note that, according to the US Attorney in this District, "Informal Resolution" in the BoP can be done verbally. See, Declaration of King [Doc 17, Ex. A, ¶5] in HODGE v. US (BOP), No. 20CV 10474 (JPC), SDNY. While not ideal, Mr. Tashbook agreed to spend the no more than six days in the Quarantine Unit that the Warden promised and both parties considered the matter resolved.

However, by the afternoon of Monday, 29 June 2020, Petitioner realized he was not leaving Quarantine and there was no good explanation why. The Government's Declarant, and Otisville's Administrative Remedy Coordinator, Mr. Robert Schreffler, spoke

Page 4 of 9

**Reconsideration (Cont.)**

to the petitioner and suggested to other staff that Mr. Tashbook might be at risk for suicide. This sparked a formal meeting involving Mr. Tashbook and three Department Heads (Chief Psychologist Dr. F. Davis, Unit Manager Mr. Everle, and Health Services Administrator Mr. B. Walls). The result of the meeting was a decision that Mr. Tashbook was not a risk for suicide and that his concern/grievance about when he would leave the Quarantine Unit was informally resolved when he was informed that he would be given a COVID PCR test the next day (30 June 2020) and after passing it he would be released - likely by Friday, 3 July 2020. This was a disappointing, but acceptable, resolution and Mr. Tashbook saw no reason to appeal the favorable outcome. Also he knew that the Chief Psychologist would email Petrucci with the details of the meeting and the subsequent successful informal resolution. When no PCR test was performed on him on 30 June, or the next day, he wrote the Instant Petition knowing he could not trust staff to properly implement the successful InformalResolutions he had already resolved nor to implement anything he might get from a formal BP-9 grievance to the Warden. He waited one more day, hoping things would change and the implementation failures would cease, but when they did not, he filed the Petition with this Court. In the intervening time between mailing the Petition and having it accepted by the Court, there was one more informal resolution — and one more implementation failure. On 7 July 2020 he was given a COVID PCR test and the results came back negative on

Reconsideration (Cont.)

9 July, yet he was not released then or the next day. It took a full Eight (8) MORE days — and not a single positive test was reported by anyone in Quarantine before he was released.

This afternoon Mr. Tashbook discussed the facts in this case with two fellow prisoners, both very experienced in the BoP and the Grievance System, and both agreed that no reasonable person would have considered a need to do anything more to exhaust the remedies in this case. Both agreed to file affidavits in this regard or to testify at an Evidentiary Hearing, if requested.

Other, related, facts this Court seems to have overlooked are that a BP-9 (appeal of an Informal Resolution) is signed by the Warden — so he would again claim to resolve the problem and then there would be an implementation failure, which would not be appealable because it would be an appeal of a new issue (the implementation failure) which would require a new Informal Resolution and BP-9; creating the endless loop of grievances that the Court of Appeals has been saying for several decades now is unnecessary. Also, in practice (despite policy and this Court saying otherwise) the North East Regional Office will not process BP-10's [Regional Appeals] where the Warden fails to provide a timely written response (even though policy says to consider it an appealable denial) or where the Warden seems to favorably resolve the issue at the BP-9 level (even if the prisoner suspects an implementation

Page 6 of 9

failure will occur. See, the Rejection Notice for Mr. Tashbook's BP-10 #1093114-R1 [issued 2 Nov 2021] as an example of both of these issues.

Finally, there is new factual information which a controlling decision, KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC. v YLL IRREVOCABLE TR., 729 F.3d 99, 104 (2d. Cir 2013), holds to be grounds for a rehearing. After this Court issued its Doc 48 Order, Mr. Tashbook met with the two FCI Otisville Unit Managers, Mr. Everle (who was over the Quarantine Unit in 2020) and Mr. A. Pedone (who is over Mr. Tashbook's assigned housing unit). These are the ONLY two staff members permitted to verify that Informal Resolution was attempted and to authorize a BP-9 Grievance Form (which is required to initiate any formal Administrative Remedy). They both reviewed the Order as well as their personal recollections of the incident and stated, without reservation, that both then and now they would not issue me a BP-9 as it seemed that my grievance was informally resolved. They both agreed to testify to those facts if the Court requested their statements/live testimony.

In its Order, this Court also said "Petitioner could have attained relief via a challenge to Otisville's quarantine policy writ large." (Doc 48 at 12-13). The fundamental flaw in this argument — and why it needs

to be reconsidered — is that THERE IS NO OTISVILLE QUARANTINE POLICY! In the two years that this case has been litigated, there has never been a single exhibit of (nor even a reference to) any "Otisville Quarantine Policy" or ANY policy document specific to Otisville and involving COVID.

None of the Unit moves that Mr. Tashbook experienced in this incident were required by any formal policy. None of the testing delays were linked to any policy. In fact, according to Otisville Medical Staff, not a single PCR COVID test was performed on ANY Otisville prisoner in all of 2022, despite there being COVID outbreaks affecting HUNDREDS of prisoners and staff this year at Otisville.

Strangely, without ever being triaged, let alone examined by any Doctor, Nurse, or PA, nor being given a test to see if he had the COVID virus (unlike in 2020), in January 2022 Mr. Tashbook was designated as "Positive" for COVID. He was NOT moved out of his cell at any time and was not told he would be tested EVER for the COVID virus and indeed was never tested. Then, despite STILL not being seen by ANY Doctor, Nurse, PA, etc. at any time, and not getting a test for the COVID virus, he was suddenly (and formally, on the BOP's Website and the Bureau Electronic Medical Record [BEMR]) listed as "COVID Recovered" on 4 Feb 2022. These random and bizarre practices

could not be and were not — part of any "official policy."

Just to be sure, Petitioner accessed the prison's LEXIS database and after searching across every file for the terms, "Otisville COVID Polic(y/ies)" anywhere in any opinion, did not get a single hit. No one has ever cited or even alluded to any formal Otisville Quarantine (or COVID) policy — because none exists.

Based on all of the above and in the interest of fairness and justice, Mr. Tashbook prays for all available relief including reconsidering and deciding the exhaustion issue in his favor.

With much Respect and Thanks,

23 April 2022       *Robert Tashbook*
                    Mr. Robert TASHBOOK, pro se
                    #00362111 (FCI Otisville)
                    PO Box 1000, Otisville NY 10963-1000

I affirm under penalty of perjury, as per 28 USC §1746, that everything herein is true and correct.

23 April 2022       *Robert Jay Tashbook*
                    Mr. Robert J. Tashbook, pro se

Page 9 of 9

Please confirm this was received/filed and the Docket Number it was assigned.



Thanks!

Robert TASHBOOK
#00362111



PO Box 1000
Otisville NY 10963-1000



Petitioner has filed a Motion for Reconsideration (*see* Dkt. No. 50), of this Court's Order Adopting Judge Davison's Report & Recommendation and denying Petitioner's Petition for a Writ of Habeas Corpus, (*see* Order (Dkt. No. 48). "Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (citation omitted), *aff'd*, 577 F. App'x 11 (2d Cir. 2014).  The standard for such motions is "strict" and "should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Instead, "[a] motion for reconsideration should only be granted when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Petitioner has not met this standard here.  The Court has already considered and rejected Petitioner's implementation failure argument, (*see* Order 12-13), and because the Court determined that the Petition failed as a matter of law, (*see id.* at 14-15), none of Petitioner's factual disputes is material.

Accordingly, Petitioner's reconsideration motion is denied.  The Clerk of Court is directed to terminate the pending motion, (*see* Dkt. No. 50), and mail a copy of this Order to Petitioner.

SO ORDERED

KENNETH M. KARAS U.S.D.J.

5/6/2022